**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **"AMY,"** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:16-CV-212 (MTT)** |
| | ) | |
| **JOHN LEE ANDERSON, III,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Defendant John Lee Anderson, III has moved to dismiss the Plaintiffs' complaint;
he contends the claims are barred by the applicable statutes of limitation.  Doc. 13.  The
motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiffs "Amy," "Vicky," and "Alice" were repeatedly sexually abused when they
were minors.  Doc. 10 at ¶¶ 19-37.  Images of their abuse were distributed, and
continue to be circulated, on the internet.  *Id.*  In April 2006, law enforcement agents
found images depicting child sex abuse on Anderson's computer.  *Id.* at ¶ 39.  Analysts
from the National Center for Missing and Exploited Children identified images of each of
the Plaintiffs among the images on Anderson's computer.  *Id.* at ¶¶ 41-46.  On January
28, 2009, Anderson was charged with knowingly possessing child pornography in
violation of 18 U.S.C. § 2252(a)(4)(B) and pled guilty on the same day.  *Id.* at ¶¶ 47-48;
*United States v. Anderson*, 5:09-cr-5, Doc. 4 (M.D. Ga.).  Anderson was sentenced to
70 months in prison and 20 years supervised release.  Doc. 10 at ¶ 50; *Anderson*, 5:09-
cr-5, Doc. 16.

On May 26, 2009, Amy and Alice received victim identification notices from the Department of Justice informing them that Anderson possessed their images.  Doc. 10 at ¶¶ 15, 17.  On August 4, 2009, Vicky received a victim identification notice.  *Id.* at  ¶ 16.  Before that, the Plaintiffs had no knowledge of Anderson.  Doc. 10 at ¶ 53.  At the time of notification, Alice was still a minor, while Amy and Vicky were adults.  *Id.* at  ¶¶ 15-17.

On June 7, 2016, the Plaintiffs filed this complaint alleging claims under 18 U.S.C. § 2255, 18 U.S.C. § 2252A, and the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. §§ 16-14-1, *et seq.*  Doc. 1.  Plaintiffs filed an amended complaint on September 26, 2016.  Doc. 10.

## II. <u>DISCUSSION</u>

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted).  "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th

Cir. 2015) (quotation marks omitted) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993)).

The statute of limitations is an affirmative defense. "Because [a] statute of limitations bar is an affirmative defense, . . . plaintiff[s] [are] not required to negate the affirmative defense in their complaint." *Alvarez v. U.S. Immigration and Customs Enf't*, 818 F.3d 1194, 1229 (11th Cir. 2016) (quotation marks and citation omitted). "A complaint is subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quotation marks and citation omitted).[1]

## A.    Amy's and Vicky's § 2255 Claims

Anderson argues Amy's and Vicky's § 2255 claims are barred by the ten year statute of limitations found in 18 U.S.C. § 2255(b).[2]  Doc. 13 at 5, 10.  That statute of

---

[1] The Court acknowledges possible tension between Eleventh Circuit authority addressing when a complaint can be dismissed on statute of limitations grounds and *Iqbal* and *Twombly*. *See, e.g., In re Underwood*, 2013 WL 4874341, *3 (Bankr. N.D. Ala. Sept. 12, 2013); *compare Tello v. Dean Witter Reynolds*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005), *abrogated on other grounds by Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), *as recognized by Walter v. Avellino*, 565 F. App'x 464 (11th Cir. 2014), *with Twombly*, 550 U.S. 544.  *Tello v. Dean Witter Reynolds, Inc.* states: "[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that [the plaintiff] can prove no set of facts that toll the statute."  410 F.3d at 1288 n.13 (quotation marks and citation omitted) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  However, in *Bell Atl. Corp. v. Twombly*, the Supreme Court concluded that a complaint must "'state a claim to relief that is plausible on its face,'" refining Conley's "prove no set of facts" standard.  550 U.S. at 570. Subsequently, in unreported decisions, *Lindley v. City of Birmingham*, 2013 WL 1336609, *2 (11th Cir. 2013), and *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008), the Eleventh Circuit cited *Tello* for the proposition that a complaint is barred by the statute of limitations only "if it appears beyond a doubt that [the plaintiff] can *prove no set of facts* that toll the statute." (emphasis added).  To the extent there is any tension between Eleventh Circuit authority and *Iqbal* and *Twombly*, it is not relevant here because, with one exception, Anderson admits the Plaintiffs' factual allegations for purposes of his motion but, instead, challenges the legal ramifications of those allegations.  The one exception is Anderson's challenge to Alice's allegations that she was under a minority when she discovered her claim, which the Court rejects and rules in favor of Alice.

[2] In 2013, Congress changed the statute of limitations from six to ten years.  Anderson does not dispute that the ten year statute of limitation applies.  *See Cooper Stevedoring of Louisiana, Inc. v. Washington*, 556 F.2d 268, 271-72 (5th Cir. 1977) (retroactively applying amendment to statute of limitations where the claim was not stale under previous limitations period at the time of amendment); *cf. Singleton v. Clash*,

limitations begins to run "after the right of action first *accrues* or in the case of a person under a legal disability, not later than three years after the disability."  18 U.S.C. § 2255(b) (emphasis added).

The question here is whether Amy's and Vicky's claims accrued when Anderson committed his crimes, which was in or before January 2006, or when Amy and Vicky received notice of Anderson's crimes in 2009.  "Accrual," when used to define the starting point of a statute of limitations, is ambiguous.  *Foudy v. Miami-Dade Cty.*, 823 F.3d 590, 593-94 (11th Cir. 2016); *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1431 (11th Cir. 1997).  Accrual can mean the occurrence of an event or it can mean the plaintiff's discovery of that occurrence.[3]  Because Anderson committed his crimes more than ten years before the Plaintiffs filed this action, Anderson contends that Amy's and Vicky's § 2255 claims accrued when the crimes occurred.  Doc. 13 at 5, 10.  Amy and Vicky argue their claims accrued when they learned of Anderson's criminal conduct in 2009.  Doc. 14 at 4-8.  In short, the issue is whether the discovery rule applies to § 2255 claims.[4]  This is a question of first impression in this circuit.

---

951 F.Supp.2d 578, 591 (S.D. N.Y. 2013) (declining to retroactively apply 2013 amendment where the claim was stale prior to the enactment of the amendment).

[3] Courts have noted at least four different times when a cause of action can accrue: "(1) When the defendant breaches his duty; (2) when the plaintiff suffers harm; (3) when the plaintiff becomes aware of his injury; and (4) when the plaintiff discovers the causal relationship between his harm and the defendant's conduct."  *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 167-168, 371 A.2d 170, 172 (1977); *King v. Seitzingers, Inc.*, 160 Ga. App. 318, 319, 287 S.E.2d 252, 254 (1981).  Point one—breach—and point two—injury—state occurrence rules for accrual.  Points three and four are discovery rules.

[4] In a footnote in their brief, the Plaintiffs state they suffered a "new or second injury within the limitations period for the purposes of accrual."  Doc. 14 at 6 n.2 (quotation marks omitted).  Other than this, the Plaintiffs say nothing about a new injury.  Certainly their amended complaint does not allege a new injury; Amy and Vicky simply allege they "suffered personal injury as a result of the Defendant's criminal acts."  Doc. 10, ¶ 64.  Apparently the "new injury" is just that caused by Anderson, as opposed to injuries caused by others who filmed, distributed or downloaded pornographic activity or images.  If so, the question is still when the claims for those injuries accrued.

-4-

1.      **The Discovery Rule in the Eleventh Circuit**

Generally speaking, the federal discovery rule provides that a cause of action accrues when a plaintiff is aware of his injury and its cause.  Although it has been said that the discovery rule "is bad wine of recent vintage," *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (Scalia, J., concurring), it still has a place at the table.  The Eleventh Circuit's decision in *White v. Mercury Marine, Div. of Brunswick*, 129 F.3d 1428 (1997), is a good starting point for figuring out where that place is.  There, the Court interpreted the general maritime statute of limitations, 46 U.S.C. § 763a, which runs "from the date the cause of action accrued."  *White*, 129 F.3d at 1430-31.  Noting the ambiguity of "accrue" and the absence of legislative history, the Eleventh Circuit turned to two Supreme Court cases interpreting similar statutory language.  *Id.* at 1431.

First, the Eleventh Circuit discussed *Urie v. Thompson*, 337 U.S. 163 (1949), in which the Supreme Court addressed when a Federal Employers Liability Act (FELA) silicosis claim accrued to determine if a railroad worker's claim was barred by the three year statute of limitations.  *White*, 129 F.3d at 1432.  The railroad argued the worker's claim accrued when he contracted silicosis, which, given his prolonged exposure to silica dust, must have occurred more than three years before he filed suit.  337 U.S. at 169.  The Supreme Court disagreed, holding the claim accrued on the date the worker first knew or should have known of his injury and its cause.  *Id.* at 170.  As the Eleventh Circuit in *White* put it, the Supreme Court reasoned that "adopting an actual occurrence or onset theory of accrual would punish the worker's 'blameless ignorance' in ways that the FELA's 'humane legislative plan' never intended."  129 F.3d at 1432.  The plaintiff in *White* sought to distinguish *Urie*, arguing it stood not for the application of the injury

discovery rule but rather for the most plaintiff-friendly accrual theory. *Id.* at 1433. The

Eleventh Circuit disagreed, noting that the discovery rule is neutral and thus should not

be applied only when it works to a plaintiff's benefit. *Id.*

> [The discovery rule] protects plaintiffs who are unaware of their injury,
> while requiring those plaintiffs who have "discovered" their injury to file suit
> within the prescribed period. It, like the statute of limitations in general, is
> a neutral balancing of interests, which must be neutrally applied
> regardless of the party it benefits in a particular case.

*Id.*

The Eleventh Circuit then examined *United States v. Kubrick*, 444 U.S. 111

(1979), which addressed the Federal Tort Claims Act's requirement that a plaintiff

present his claim within two years after his claim accrued. *White*, 129 F.3d at 1433. In

*Kubrick*, the plaintiff knew of his injury and its cause but did not know the injury was

negligently inflicted. *444 U.S.* at 114-15. Thus, the plaintiff argued his claim did not

accrue until he discovered his injury was the result of negligence. *Id.* at 115. The

Supreme Court disagreed and held that the plaintiff's claim accrued when he discovered

his injury and its cause rather than when the plaintiff realized he had a cause of action.

*Id.* at 122-23.

> In *White*, the Eleventh Circuit found *Urie* and *Kubrick* persuasive:

> So, twice the Supreme Court has been presented with federal statutes of
> limitations language materially identical to that in the general maritime
> statute of limitations, and twice the Supreme Court has held that courts
> should use the discovery rule to determine when a cause of action
> accrues. It is a familiar canon of statutory construction that courts should
> construe similar statutory language similarly. . . . We see no good reason
> to give the term "accrue" as Congress used it in the general maritime
> statute of limitations a different meaning from that the Supreme Court
> gave the identical term when Congress used it in the FELA and FTCA
> statutes.

129 F.3d at 1434.  Indeed, the Eleventh Circuit observed that it seemed Congress had agreed with "the Supreme Court's construction of the word 'accrue,'" given that the Supreme Court in *Kubrick* "practically invited Congress" to address its interpretation of accrue "if the Court had misjudged the legislative intent on the matter."  *Id.* at 1434-35. Yet, Congress enacted the general maritime statute of limitations well after *Urie* and *Kubrick*, "suggest[ing] that Congress tacitly accepted the [Supreme] Court's interpretation [of accrue], or at least was not noticeably upset with it."  *Id.* at 1434. Accordingly, the Eleventh Circuit held that causes of action subject to the general maritime statute of limitations accrue when the plaintiff knew or should have known of his injury and its cause.  *Id.*

At that point it seemed, as the Supreme Court said in *Rotella v. Wood* three years after *White*, that federal courts "generally apply a discovery accrual rule when a statute is silent on the issue . . . ."  528 U.S. 549, 555 (2000).  In *Rotella*, a civil RICO action, the Supreme Court granted certiorari to resolve a split between circuits that applied the discovery rule and those that applied an "injury and pattern discovery rule," which states a claim accrues when a plaintiff discovers his injury and the pattern of RICO activity.  *Id.* at 552-54.[5]  The Supreme Court sided with those circuits applying a traditional injury discovery rule.  *Id.* at 555-56.  Referring to *Kubrick*, the Court noted that even in the context of medical malpractice claims, "where the cry for a discovery rule is loudest," the Court had never found a need for a discovery rule that allowed for accrual beyond the date a plaintiff discovers his injury.  *Id.* at 555-56.

---

[5] The Third Circuit applied a third rule, called a Last Predicate Act Rule, which provided that the statute of limitations began to run anew upon each predicate act.  *Rotella*, 528 U.S. at 554.

The next year, in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), the Supreme Court considered when the two year statute of limitations for civil suits based on the Fair Credit Reporting Act (FCRA) begins to run. At the time, 15 U.S.C. § 1681p provided that a claim had to be brought "within two years from the date on which the liability arises." *TRW*, 534 U.S. at 22. But—and this proved to be an important but—the statute also created an exception in the case of willful misrepresentations; as a result, a plaintiff could bring suit "within two years after . . . discovery . . . of the misrepresentation." *Id.* Given that § 1681p provided an express discovery rule as an exception to its general statute of limitations, the Supreme Court held that Congress clearly did not intend for the discovery rule to apply to the general statute of limitations. *Id.* at 33. If it had, there would be no need for the exception. *Id.* However, the Supreme Court had something to say on the discovery rule generally. *See id.* at 27-28. Noting that the circuit court had "rested its decision on the premise that all federal statutes of limitations, regardless of context, incorporate a general discovery rule 'unless Congress has expressly legislated otherwise,'" the Court stated this "conspicuously overstated [the] scope and force" of any presumed general discovery rule. *Id.* at 27. The Court acknowledged its statement in *Rotella* that federal courts generally apply a discovery accrual rule when a statute of limitations is silent on the question but clarified that the Court itself had not adopted that position. *Id.* More to the lower court's point, the Court rejected the view that, unless expressly rejected by Congress, then a discovery rule should be implied.[6] *Id.* at 27-28.

Finally, as far as the Supreme Court is concerned, the Court held in *Gabelli v. SEC*, 133 S.Ct. 1216 (2013), that the Government could not avail itself of the discovery

---

[6] It was in *TRW* that Justice Scalia, in a concurring opinion, argued that the "injury-discovery rule applied by the [Ninth Circuit] is bad wine of recent vintage." 534 U.S. at 37.

rule in an enforcement action against investment advisors for civil penalties for the

simple reason that the Court had never applied the discovery rule in a Government

enforcement action.  *Id.* at 1223-24.

> There are good reasons why the fraud discovery rule has not been
> extended to Government enforcement actions for civil penalties.  *The
> discovery rule exists in part to preserve the claims of victims who do not
> know they are injured and who reasonably do not inquire as to any injury.
> Usually when a private party is injured, he is immediately aware of that
> injury and put on notice that his time to sue is running.  But when the injury
> is self-concealing, private parties may be unaware that they have been
> harmed.*

*Id.* at 1222 (emphasis added).  But the Government is more than a different kind of

plaintiff, the Court continued.  *Id.* at 1223.  The relief it seeks in a civil enforcement

action—civil penalties—is different than that sought in cases in which the Court had

applied the discovery rule.  *Id.*  "The discovery rule helps to ensure that the injured

receive recompense.  But this case involves penalties, which go beyond compensation,

are intended to punish, and label defendants wrongdoers."  *Id.* at 1223.  Moreover, the

Court questioned when the Government, with its vast apparatus, could be said to have

reasonably discovered a violation.  *Id.*  In short, the discovery rule did not fit with SEC

enforcement actions, and absent Congressional direction, the Court refused to adopt

the discovery rule.  *Id.* at 1224.

The Eleventh Circuit had the opportunity in *Foudy v. Miami-Dade Cty. (Foudy I)*,

823 F.3d 590 (11th Cir. 2016), to consider the impact of the Supreme Court's treatment

of the discovery rule since *White.*  In *Foudy I*, the plaintiffs claimed the discovery rule

applied to their civil claim for violation of the Driver's Privacy Protection Act (DPPA),

which prohibits state motor vehicle departments from disclosing a driver's personal

information.  *Id.* at 593-594.  The DPPA does not have its own statute of limitations, so

the general or catch-all statute of limitations found in 28 U.S.C. § 1658 applied.  *Id.*  The

§ 1658 statute of limitations begins to run when "the cause of action accrues."  *Id.* at

593.  Toni Foudy, a former sheriff's deputy, claimed that various law enforcement

officers accessed her and her husband's personal information "for malicious and

vindictive reasons."  *Id.* at 592.  Although the Foudys filed their lawsuit more than three

years after their personal information had been improperly accessed, they alleged they

were unaware of the violations until Toni requested her driving record.  *Id.*  Thus, they

argued their claim did not accrue until their discovery of the violations.  *Id.* at 593.

   The Eleventh Circuit's discussion is relatively brief because it largely adopted the

analysis of the Eighth Circuit's decision in *McDonough v. Anoka Cty.*, 799 F.3d 931

(2015), holding that a DPPA claim accrues upon the occurrence of the violation, not

when the plaintiff discovers the violation.  However, the Eleventh Circuit expressly

embraced *McDonough's* observation that the Supreme Court's decisions in *TRW, Inc. v.*

*Andrews*, 534 U.S. 19 (2001), and *Gabelli v. SEC*, 133 S.Ct. 1216 (2013), "instruct that,

in the absence of a clear Congressional directive or a self-concealing violation, the court

should not graft a discovery rule onto a statute of limitations."  823 F.3d at 593-94.

   With regard to a Congressional directive, the Eleventh Circuit noted, as did the

Eighth Circuit in *McDonough*, that Congress knew how to differentiate between an

occurrence rule and a discovery rule when it last amended § 1658 (adding subsection

(b) which was not applicable in *Foudy I*), yet it retained the ambiguous "accrue" in

subsection (a).  *Id.* at 594.  That Congress left "accrue" in § 1658(a) suggested that it

may have "intended the trigger for the date of accrual to vary depending upon the

specific cause of action at hand."  *Id.* (quotation marks omitted) (quoting *McDonough*,

799 F.3d at 943).  With regard to DPPA claims, the Eleventh Circuit agreed with the Eighth Circuit's conclusion that "DPPA violations are not by their nature self-concealing."  *Id.* (quotation marks omitted).  It is important to make clear what the Eleventh Circuit referred to when quoting *McDonough*'s discussion of "self-concealing" violations.  The entire sentence from which the Eleventh Circuit took the quote reads: "But even if Drivers had no reason to know of the alleged accesses, unlike violations grounded in *fraud, latent disease, or medical malpractice*, DPPA violations are not by their nature self-concealing."  *McDonough*, 799 F.3d at 943 (emphasis added).  For this proposition, the Eighth Circuit cited *TRW* and *Rotella* with this parenthetical note:  "[I]t is cases involving concealment or latent injuries in which the court has recognized a prevailing discovery rule and in which 'the cry for [such a] rule is loudest.'"  *Id.*

The Eleventh Circuit agreed that a DPPA violation is not of a nature that "'cr[ies] out' for application of the discovery rule," referring to *McDonough*'s discussion of *TRW*. *Foudy I*, 823 F.3d at 594.  As discussed, in *TRW*, the Supreme Court noted that it had recognized a discovery rule "in two contexts, latent disease and medical malpractice, 'where the cry for [such a] rule is loudest.'"  *TRW, Inc.* 534 U.S. at 27 (quoting *Rotella*, 528 U.S. at 555).  The Supreme Court was referring, of course, to *Kubrick* and *Urie*. *See id.*  In *McDonough*, the Eighth Circuit reasoned that if the FCRA and its protection of private information "does not govern an area of the law that cries out for the discovery rule, then neither does the DPPA."  799 F.3d at 933 (quotation marks omitted) (quoting *TRW*, 534 U.S. at 28).  The Eleventh Circuit agreed with the Eighth Circuit and held that the statute of limitations for the Foudys' DPPA claims began to run when the violations occurred.  *Foudy I*, 823 F.3d at 594.

In *Foudy v. Indian River Cty. Sheriff's Office (Foudy II)*, the Foudys were back in the Eleventh Circuit after a district court held that their 42 U.S.C. § 1983 civil rights claims for DPPA violations were also barred by the statute of limitations because their civil rights claims accrued when the violations occurred. 845 F.3d 1117, 1121-22 (11th Cir. 2017). Conceding, as a result of *Foudy I*, that their DPPA claims were subject to the occurrence rule, the Foudys argued that their § 1983 claims accrued upon the discovery of their injury. *Id.* at 1122. The Eleventh Circuit acknowledged that "in many contexts, our cases have held § 1983 claims are governed by a discovery rule" but noted that recent Supreme Court cases suggested the discovery rule may have been applied too broadly. *Id.* at 1122-23. "Accordingly," the Court determined, "it should be clear that our application of the discovery rule in other § 1983 cases does not require us to apply it to a new circumstance."[7] *Id.* at 1123. Moreover, the typical § 1983 case is subject to the forum state's statute of limitations for personal injury actions. *Id.* at 1123. But because the DPPA is a federal statute, § 1983 claims brought for DPPA violations are subject to the general federal statute of limitations in § 1658. *Id.* at 1123-24. Therefore, given that the Eleventh Circuit had already held that a DPPA statutory claim is subject to the occurrence rule, when applying § 1658, it was "only logical that the occurrence rule . . . would travel with it in § 1983 cases." *Id.* at 1124.

The Eleventh Circuit then turned to the Foudys' argument that, even if the occurrence rule applied, the statute of limitations had been equitably tolled. *Id.* at 1124-25. In discussing equitable tolling, the court referred to *Foudy I*'s discussion of "self-

---

[7] The Court also noted that the discovery rule provides that a claim accrues when a plaintiff knew *or should have known* of his injury. *Foudy II*, 845 F.3d at 1123. This constructive knowledge element, the Court reasoned, often renders the discovery rule in effect an occurrence rule. *Id.* Here, Anderson does not contend that Amy and Vicky should have known of their injury before their notification in 2009.

concealing." *Id.* at 1125.  But it is important to note the difference between "self-concealing" in the context of the discovery rule (as in *Foudy I*) and equitable tolling (as discussed in *Foudy II*).  A statute of limitations can be equitably tolled when a defendant affirmatively conceals his wrong or "'where the wrong is of such a character as to be self-concealing.'"[8]  *Id.* at 1124 (quoting *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 & n.2 (11th Cir. 1987)).  In the context of equitable tolling, a self-concealing wrong, the Eleventh Circuit noted, "is one in which the clandestine nature of the activity is essential to the act itself, where a 'deception, misrepresentation, trick or contrivance is a necessary step in carrying out the illegal act,' [and not] merely 'separate from the illegal act and intended only to cover up the act.'"  *Id.* at 1125 (quoting *Hobson v. Wilson*, 737 F.2d 1, 33-34 n.102 (D.C. Cir. 1984), *overruled in part on other grounds* by *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).  Because neither fraud nor deception is an element of a DPPA violation, the Eleventh Circuit held that DPPA violations are not, for the purpose of equitable tolling, self-concealing.  *Id.* at 1125.

### 2.    Section 2255(b) and the Discovery Rule in Other Circuits

As noted, the question of whether the discovery rule applies to § 2255(b) is one of first impression in this Circuit.  Thus far, the only appellate court to address the issue is the Third Circuit.[9]  In *Stephens v. Clash*, the Third Circuit, pursuant to its precedent,

---

[8] This essentially is the common law rule for tolling based on a defendant's fraud.  When actual fraud is the gravamen of the action, the statute of limitations is tolled until the plaintiff discovers or should have discovered the fraud.  When the underlying action does not involve actual fraud, the statute of limitations is tolled only when the defendant fraudulently conceals his misconduct.  *See Am. Nat. Bank of Macon v. Fidelity & Deposit Co.*, 131 Ga. 854, 63 S.E. 622, 625 (1909).

[9] In *S.M. v. Clash*, the Second Circuit addressed the accrual of § 2255 claims but "assum[ed] without deciding that a discovery rule applies to § 2255 claims" in dismissing the plaintiffs' claims as time-barred. . 558 F. App'x. 44, 45 (2d Cir. 2014).

"look[ed] to whether Congress intended that the discovery rule would not apply, either 'by explicit command or by implication from the structure and text of the statute . . . .'" 796 F.3d 281, 284-85 (3rd Cir. 2015) (quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 434 (3rd Cir. 2009)).  In the absence of such a Congressional directive, the Third Circuit applies a discovery rule.  *Id.* at 285.  Examining § 2255(b)'s text, the Third Circuit found no explicit command to not apply a discovery rule.  *Id.* at 285.  On the contrary, the court concluded that the statutory scheme favored the application of the discovery rule.  *Id.*  Congress's purpose in providing civil remedies to victims of child pornography was to provide meaningful means of seeking redress for victims of the "'multi-million dollar' child-exploitation industry."  *Id.*  Absent a discovery rule, that Congressional purpose would be thwarted because typically child pornography is distributed in secret.  *Id.* at 286.

The court rejected the rationale of a district court in *Singleton v. Clash*, 951 F.Supp.2d 578 (S.D.N.Y. 2013) (*aff'd sub nom. on other grounds, S.M. v. Clash*, 558 Fed. App'x. 44 (2d Cir. 2014)).[10]  *Id.* at 287-88.  The district court in *Singleton* concluded that because Congress did not explicitly craft a discovery rule, courts should not imply one.  951 F.Supp.2d at 587.  The Third Circuit disagreed, noting that "the weight of authority rejects the proposition that Congress must have expressly adopted the discovery rule for that rule to apply."  *Stephens,* 796 F.3d at 287.  Neither was the Third Circuit persuaded by the district court's analysis in *Singleton* that § 2255(b)'s exception for a person under a legal disability somehow suggested that the discovery rule did not apply.  *Id.*  Essentially, that exception allows plaintiffs to sue for violations that occurred

---

[10] On appeal, the Second Circuit assumed, but did not decide, that a discovery rule applied to § 2255 but affirmed the district court's dismissal because even with the benefit of the discovery rule, the plaintiff's claims were barred by the statute of limitations.  558 F. App'x at 45.

while they were minors for up to three years after they reach majority.  18 U.S.C. §

2255(b).  The two provisions, to the Third Circuit, were apples and oranges.  *See*

*Stephens*, 796 F.3d at 287-88.  The availability of tolling for minority had nothing to do

with whether the discovery rule applied to the general statute of limitations.  *Id*.  Citing

*TRW*, the court noted that if, as was the case in *TRW*, Congress had enacted an

exception that was based on the discovery rule, then that well could indicate

Congressional intent that the general statute of limitations was not subject to the

discovery rule.  *Id*.  The minority exception in § 2255 was not such an exception.

Finally, the court noted that the application of the discovery rule to § 2255 is

consistent with decisions from other circuits considering whether the discovery rule

applies to other federal statutes.  *Id*. at 286-87; *see also Psihoyos v. John Wiley &*

*Sons, Inc*., 748 F.3d 120, 124-25 (2d Cir. 2014); *Maverick Transp., LLC v. U.S. Dep't of*

*Labor, Admin. Review Bd*., 739 F.3d 1149, 1154 (8th Cir. 2014); *Skwira v. United*

*States*, 344 F.3d 64, 73-74 (1st Cir. 2003).

### 3.    The Discovery Rule and § 2255(b) under Supreme Court and Eleventh Circuit Precedent

If this Court were guided solely by the Eleventh Circuit's decision in *White*, the

determination of whether the discovery rule applies to § 2255(b) would be

straightforward.  When Congress enacted § 2255(b) in 1986, it knew the Supreme Court

had held that the discovery rule determined when a cause of action accrued.  Thus, by

using "accrue" in § 2255(b), Congress must have intended the discovery rule to apply.

There is simply "no good reason" to give the term "accrue" as Congress used it in

§ 2255 "a different meaning from that the Supreme Court gave the identical term when

Congress used it in the FELA and FTCA statutes."  *White*, 129 F.3d at 1434; *see also*

*Kubrick*, 444 U.S. 111; *Urie*, 337 U.S. 163.  Moreover, to paraphrase *White*, Amy and Vicky should not be punished for their "blameless ignorance."  129 F.3d at 1432.

Of course, the landscape has changed since *White*; the question is by how much.  Though the Supreme Court has been reluctant to extend the discovery rule, it has not wavered from its holdings that in the case of latent or self-concealing injuries, the discovery rule remains viable.  *See TRW*, 534 U.S. at 38.  "Certainly," the Court has "not bar[red] application of the discovery rule where precedent, structure and policy all favor such a rule."  *McDonough*, 799 F.3d at 942 (citation omitted).  Rather, as the Eleventh Circuit said in *Foudy I*, "in the absence of a clear Congressional directive or a self-concealing violation, [courts] should not graft a discovery rule onto a statute of limitations."  823 F.3d at 593-94.

There is no clear Congressional directive to apply the discovery rule to § 2255(b)—other than perhaps the tacit approval suggested by *White*.  However, it is significant that the purpose and intent of § 2255 are certainly consistent with the application of the discovery rule.  *See, e.g.*, Violence against Women Reauthorization Act of 2013, P.L. 113-4, Title XII, § 1212(a), Mar. 7, 2013, 127 Stat. 143; Adam Walsh Child Protection and Safety Act of 2006, P.L. 109-248, Title VII, §§ 707(b), (c), July 27, 2006, 120 Stat. 650.   That is, there is nothing to indicate Congress would disapprove of applying the discovery rule to § 2255(b).  Section 2255 is part of a much broader effort by Congress to impose stiff penalties and sanctions on child pornographers.[11]  Allowing

---

[11] *See generally, e.g.*, Justice for Victims of Trafficking Act of 2015, PL 114-22, May 29, 2015, 129 Stat 227; Child Protection Act of 2012, PL 112-206, December 7, 2012, 126 Stat 1490; Adam Walsh Child Protection and Safety Act of 2006, PL 109–248, July 27, 2006, 120 Stat 587; Protection of Children from Sexual Predators Act of 1998, PL 105–314, October 30, 1998, 112 Stat 2974; U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses*, (2012) http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-

victims ten years from the discovery of their injuries to pursue their claims is consistent with this intent.  Moreover, the Court disagrees with Anderson's argument that the enactment of a ten-year statute of limitations suggests Congress intended that to serve the goals of the discovery rule.  Doc. 13 at 7 n.1.  Anderson argues by allowing ten years from the violation to sue, Congress allowed victims a better opportunity to discover they have been injured.  *Id.* at 6-7.  But that would mean Congress intended that a victim who learned of violations only eleven years after they occurred—a not unlikely event given the secretive nature of child pornographers—would be deprived of means of redress.  There is nothing in the legislative history to suggest that.  The Court assumes, however, that this is not sufficient to constitute a clear directive to apply the discovery rule, and thus the Court turns to whether Amy's and Vicky's injuries are self-concealing.

The critical issue with regard to "self-concealing" is whether § 2255 violations are self-concealing in the same vein as "violations grounded in fraud, latent disease, or medical malpractice."[12]  *McDonough*, 799 F.3d at 943 (citing *TRW*, 534 U.S. at 27).  Injuries resulting from § 2255 violations are akin to those suffered by railroad workers and medical malpractice victims.  If anything, Amy's and Vicky's injuries were more latent because they had no way to know they had been injured until Anderson was caught and authorities notified them of his crimes.  Unlike the diseased worker or injured patient, there was nothing even to alert them to the possibility that Anderson had

---

offenses; U.S. Sentencing Comm'n, *The History of the Child Pornography Guidelines*, (2009), http://www.ussc.gov/research/research-reports/2009-history-child-pornography-guidelines.

[12] The Court again notes the distinction between the meaning of "self-concealing" as the Supreme Court, the Eighth Circuit in *McDonough*, and the Eleventh Circuit in *Foudy I* used the term regarding the discovery rule and the meaning as used by the Eleventh Circuit in *Foudy II* in the context of equitable tolling.  The Court does not conclude that the Eleventh Circuit in *Foudy II* meant that the discovery rule should be limited to cases of actual fraud or fraudulent concealment.  *See Foudy II*, 845 F.3d at 1124-25.

downloaded their images.  And unlike the Foudys, who could request their driving records to learn of the DPPA violations, Amy and Vicky had no means to determine Anderson had injured them.  *Cf. Foudy I*, 823 F.3d at 592.  Finally, Amy and Vicky did not suffer the relatively minor slight of having their debt or driver's license information perused, as in *TRW* and *Foudy I*.  They suffered true injuries of the most gut-wrenching nature.  Indeed, the effect of child sex exploitation on minors is the motivating force behind Congress's broad-based and systematic effort to bring that industry to its knees.[13]  Certainly, their injuries are among those where the "cry for a discovery rule is loudest."  *Rotella*, 528 U.S. at 555.  The Court therefore concludes that § 2255 violations are self-concealing and, thus, the discovery rule applies to Amy's and Vicky's claims.

Accordingly, Amy's and Vicky's § 2255 claims are not barred by the statute of limitations.

**B.    Alice's 2252A(f) Claim**

Alice brings a 18 U.S.C. § 2252A(f) claim, which provides a civil remedy for victims of §§ 2252A(a) or (b).  Doc. 10 at ¶ 68.  Section 2252A(f) does not provide its own statute of limitations; thus, the general four year statute of limitations found in 28 U.S.C. §1658 applies.  Absent tolling, the statute of limitations ran on Alice's § 2252A(f) claim long before she filed suit.  This is the case regardless of whether the claim accrued in 2006, when Anderson committed the crime, or 2009, when Alice discovered the crime.  But, Alice contends, and Anderson does not dispute, that the § 1658 statute

---

[13] *See supra* n.11.

of limitations is tolled by minority.[14]  *See* Doc. 13 at 15-17.  Anderson argues only that Alice alleges insufficient facts to establish she was under a "legal disability" when the claim accrued.  *Id*.  This argument has no merit.  The complaint clearly states Alice was a minor in 2008 and became an adult in 2012.  Doc. 10 at ¶ 54 ("[S]he became an adult in October 2012."), ¶ 69 ("Alice's disability ended in October 2012.")  This is sufficient to establish Alice was under eighteen, and therefore under a "legal disability," when the claim accrued in 2009.  *See* 18 U.S.C. § 2256(1) ("'minor' means any person under the age of eighteen years").  Thus, on the face of the complaint, it does not appear her claim is barred by the statute of limitations.  *See Douglas*, 535 F.3d at 1321.

## C.    Georgia RICO Claims

All three Plaintiffs bring a claim under Georgia's RICO statute, O.C.G.A. §§ 16-14-1, *et seq*.  Doc. 10 at ¶ 72-76.  RICO claims have a five year statute of limitations that runs from the time the criminal conduct terminates or the plaintiff learns of the criminal conduct.  O.C.G.A. § 16-14-8; *Harper v. State*, 292 Ga. 557, 558-59 (2013).  Because the RICO statute expressly provides a discovery rule, the Plaintiffs claims accrued in 2009.  The Plaintiffs did not file their claims within five years of the discovery of Anderson's crimes and thus, absent tolling, their claims are barred.[15]

Amy and Vicky rely on O.C.G.A. § 9-3-99 to toll the statute of limitations:

> The running of the period of limitations with respect to any cause of action
> in tort that may be brought by the victim of an alleged crime . . . shall be

---

[14] The parties cite no authority holding that tolling for minority applies to § 1658(a); they just agree that it does.  This issue may need revisiting.

[15] O.C.G.A. § 16-14-8 provides its own tolling provision for civil RICO claims where there are pending criminal proceedings.  However, this provision is limited to pending criminal RICO actions and, in any event, it provides for only two years of tolling.  O.C.G.A. § 16-14-8.  No doubt for this reason, the Plaintiffs do not invoke this tolling provision.  Anderson does not argue this express tolling provision for RICO actions precludes the application of the general tolling provision, O.C.G.A. § 9-3-99.

tolled from the date of the commission of the alleged crime . . . until the prosecution of such crime . . . has become final or otherwise terminated.

Amy and Vicky argue Anderson's prosecution is not final until Anderson serves his supervised release term of twenty years.  Doc. 10 at ¶ 54.  The Court disagrees.

This Court, like Georgia courts, must "presume the [Georgia] General Assembly meant what it said and said what it meant" and "must afford the statutory text its plain and ordinary meaning." *Harrison v. McAffee*, 338 Ga. App. 393, 397, 788 S.E.2d 872, 875-76 (2013) (quotation marks and citation omitted) (interpreting O.C.G.A. § 9-3-99). Thus, the Court applies the plain and ordinary meaning to "criminal proceeding" and "prosecution."  A criminal proceeding is defined as "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial."  Criminal Proceeding, *Black's Law Dictionary* (10th ed. 2014).  Meanwhile, prosecution is defined as "[a] criminal proceeding in which an accused person is tried." Prosecution, *Black's Law Dictionary* (10th ed. 2014).  Judgment was entered in Anderson's criminal prosecution on July 31, 2009, and there was no appeal.  Any tolling provided by O.C.G.A. § 9-3-99 then stopped.  For Amy, who learned of Anderson's crimes on May 26, 2009, the five year statute of limitations then began to run.  Doc. ¶ 15.  Vicky received notification of Anderson's crimes on August 4, 2009, and her statute of limitations began to run.  *Id.* at ¶ 16.  Because they did not file their RICO claims until June 7, 2016, their claims are barred by the statute of limitations.

Alice's statute of limitations did not begin running until she reached the age of majority.  *See* O.C.G.A. § 9-3-90(b) ("[I]ndividuals who are less than 18 years of age when a cause of action accrues shall be entitled to the same time after he or she

reaches the age of 18 years to bring an action as is prescribed for other persons."). Alice turned 18 in October 2012; thus, she timely filed her RICO claims.  As discussed, Anderson's argument that Alice has not alleged sufficient facts to establish she was a minor when the claim accrued has no merit.  In sum, Amy's and Vicky's Georgia RICO claims are barred by the statute of limitations, but Alice's is not.

### III. <u>CONCLUSION</u>

Accordingly, Anderson's Motion to Dismiss (Doc. 13) is **GRANTED in part and DENIED in part**.  Plaintiffs Amy's and Vicky's Georgia RICO claims are **DISMISSED** as barred by the statute of limitations.


**SO ORDERED**, this the 23rd day of March, 2017.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT