# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

|  |  |  |
|---|---|---|
| **"AMY," *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:16-CV-212 (MTT)** |
| | ) | |
| | ) | |
| **JOHN LEE ANDERSON, III,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

Defendant John Lee Anderson, III, has moved for summary judgment. Doc. 29.

The motion is **GRANTED**.

## I. FACTS[1]

Plaintiffs "Amy," "Vicky," and "Alice" were repeatedly sexually abused when they

were minors. Doc. 10 ¶¶ 19-37. Images of their abuse were distributed, and continue

to be circulated, on the internet. *Id.* Vicky's images are found in the child pornography

series by the same name. *Id.* ¶ 8. Images of Amy are found in what is known as the

"Misty" child pornography series. *Id.* ¶ 6. Alice's images are known as the "Christina"

series. *Id.* ¶ 10.

---

[1] Unless otherwise stated, all facts are undisputed. The Plaintiffs failed to respond to Anderson's statement of material facts. Therefore, pursuant to Local Rule 56, those material facts asserted by Anderson, "which [the Plaintiffs have] not specifically controverted by specific citation to particular parts of materials in the record," are deemed to be admitted. M.D. Ga. L.R. 56 ("All material facts contained in the movant's statement [of material facts] which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."). And those allegations to which the Plaintiffs have failed to properly address, as required by Fed. R. Civ. P. 56(c), may be considered undisputed for purposes of this motion pursuant to Rule 56(e)(2). However, as required, the Court has still "review[ed] the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citation and quotation marks omitted).

In April 2006, law enforcement agents found images depicting child sex abuse on Anderson's computer. *Id.* ¶ 39. On January 28, 2009, Anderson was charged with knowingly possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and pled guilty on the same day. *Id.* ¶¶ 47-48; *United States v. Anderson*, 5:09-cr-5, Doc. 4 (M.D. Ga.). Anderson was sentenced to 70 months in prison and 20 years supervised release. Doc. 10 ¶ 50; *Anderson*, 5:09-cr-5, Doc. 16. During Anderson's criminal proceeding, Amy, represented by one of the lawyers who now represents the plaintiffs, sought restitution but withdrew her request. Docs. 31-7 at 2; 31-10 at 3:4. [2]

The Plaintiffs allege that analysts from the National Center for Missing and Exploited Children's (NCMEC) Child Victim Identification Program (CVIP) identified images from the Christina, Vicky, and Misty series on the materials from Anderson's computer. Doc. 10 ¶¶ 41-46. Based on this alleged identification, the Plaintiffs received notices from the United States Department of Justice's Victim Notification System (VNS) informing them they were potential victims of Anderson's criminal conduct, and they received subsequent notices concerning Anderson. Docs. 31-1; 31-3; 31-5; 31-6.

On June 7, 2016, the Plaintiffs filed their complaint, asserting claims under 18 U.S.C. § 2255, 18 U.S.C. § 2252A, and the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. §§ 16-14-1, *et seq.* Doc. 1. The Plaintiffs filed an amended complaint on September 26, 2016. Doc. 10. On October 7, 2016, Anderson moved to dismiss the Plaintiffs' claims as barred by the applicable statute of limitations,

---

[2] The Plaintiffs' lead counsel, James R. Marsh, represented Amy in her restitution request in Anderson's criminal trial. Doc. 31-7 at 2 (a letter from the U.S. Attorney's Office to James R. Marsh regarding Amy's request for restitution). And, as Anderson points out, the Plaintiffs "have filed hundreds of civil suits and restitution claims around the country against various individuals who allegedly possessed, distributed, or were otherwise involved with their images." Doc. 29 at 2; *see, e.g.*, *United States v. Lundquist*, 731 F.3d 124, 127 (2nd Cir. 2013) *vacated on other grounds*; *United States v. Brunner*, 2010 WL 148433, at *1 (W.D.N.C. 2010); *United States v. Hicks*, 2009 WL 4110260, at *1 (E.D. Va. 2009). The relevant point being, apparently, the Plaintiffs' lawyers are experts in these matters.

which the Court granted in part and denied in part, dismissing Amy's and Vicky's Georgia RICO claims. Docs. 13; 17. Anderson now moves for summary judgment on the Plaintiffs' remaining claims. Doc. 29.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324). Alternatively, the

movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party to designate specific facts showing a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). When the non-moving party holds the burden at trial as to a dispositive issue, to establish a genuine fact dispute as to that issue, Rule 56(e) requires them to go beyond the pleading and produce relevant and admissible evidence. *Celotex Corp. Catrett*, 477 U.S. at 323-324 (quoting *Anderson*, 477 U.S. at 249-50). To do so, the non-movant may rely on "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting Anderson, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

# III. ANALYSIS

Plaintiffs Amy and Vicky both seek relief under 18 U.S.C. § 2255(a), which provides a civil remedy to "[a]ny person who, while a minor, was a victim of a violation of [§ 2252(a)]." Section 2252(a) addresses the production of and possession of images involving "minor[s] engaging in sexually explicit conduct." Plaintiff Alice seeks relief under 18 U.S.C. § 2252A(f), which provides a civil remedy for those "aggrieved by" certain conduct including, "knowingly possess[ing], or knowingly access[ing] with intent to view . . . child pornography [images]." Alice also seeks relief under the Georgia RICO act, which provides a civil remedy for plaintiffs "injured by reason of" racketeering activity, defined to include "any act which is indictable under . . . 18 U.S.C. § 2252."[3] O.C.G.A. § 16-14-6.

The Plaintiffs base their claims on their allegations that Anderson possessed their images and not that he received or distributed child pornography. As stated,

---

[3] O.C.G.A. § 16-14-6 provides a civil remedy to "[a]ny person who is injured by reason of any violation of [§] 16-14-4." O.C.G.A. § 16-14-4 states:

> (a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.
> (b) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.
> (c) It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section. A person violates this subsection when:
> (1) He or she together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and any one or more of such persons commits any overt act to effect the object of the conspiracy; or
> (2) He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect the object of the endeavor.

And § 16-14-3 defines "racketeering activity" to include activity defined as such by 18 U.S.C. § 1961(1), which defines racketeering activity to include "any act which is indictable under . . . 18 U.S.C. § 2252."

Anderson pled guilty to possession of child pornography in violation of 18 U.S.C.

§2252(a)(4)(B), meaning he:

> **(B)** knowingly possesse[d] . . . 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain[ed] any visual depiction that [had] been mailed, or [had] been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--
> > **(i)** the producing of such visual depiction involve[d] the use of a minor engaging in sexually explicit conduct; and
> > **(ii)** such visual depiction [was] of such conduct.

But Anderson was not charged with and did not plead guilty to possessing images of

any particular victim.  Doc. 29-3 at 2.  Thus, Anderson's conviction does not establish

that he possessed the Plaintiffs' pornographic images.  Rather, the Plaintiffs must prove

that they themselves were victimized by Anderson's conduct—that he possessed

images of them that meet the relevant statutory definitions of "child pornography" and

"sexually explicit conduct."  *See* 18 U.S.C. § 2255(a) (requiring that plaintiffs be

"victim[s] of a violation"); 18 U.S.C. § 2252A(f) (providing a remedy to those "aggrieved

by" illegal conduct); O.C.G.A. § 16-14-6 (requiring that plaintiffs be "injured by reason

of" racketeering activity).

For the reasons that follow, the Plaintiffs have failed to present sufficient

evidence to allow a reasonable jury to find, by a preponderance of the evidence, that

Anderson possessed images depicting the Plaintiffs that constitute child pornography.

**A.     Admissibility of the Plaintiffs' Evidence**

Anderson objects to the admissibility of certain evidence used by the Plaintiffs.  A

district court should determine the admissibility of evidence to determine whether there

is a genuine, material dispute of facts at the summary judgment stage and has broad

discretion in doing so. *Hetherington v. Wal–Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013) (citing *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th Cir. 2009)); *Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir. 1965) ("It is our conclusion that, according to Rule 56(e) as amended, the trial court can, and indeed should, assess the evidence presented upon the motion for summary judgment to determine its admissibility and to ascertain whether all the admissible evidence creates a genuine, material dispute of facts.").[4]

Here, Anderson contests the admissibility of (1) reports from NCMEC and CVIP; (2) notices to the Plaintiffs from the United States Department of Justice's Victim Notification Services (VNS); and (3) a letter from the United States' Attorney's Office to Plaintiff Amy's counsel.

### 1. CVIP Reports

In opposing Anderson's motion for summary judgment, the Plaintiffs rely on reports from the NCMEC's CVIP. Docs. 31 at 4-5; 31-9. According to the Plaintiffs, CVIP "assist[s] law enforcement in identifying victims of child pornography and child sexual exploitation." Doc. 31 at 4. The Plaintiffs provide little information about the reports other than that they purportedly establish that "images and videos of victims in the Christina, Misty, and Vicky series were found among [Anderson's] digital material." *Id.*

The CVIP reports, attached to the Plaintiffs' response as Exhibit E (Doc. 31-9), appear to consist of three separate reports. The first, which is entitled "ECD Technical Assistance Request," lists FBI Special Agent Jalaine Ward as the "requestor." Doc. 31-

---

[4] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9 at 2. The report also states that the suspect is "John Lee Anderson" and that Ward made a formal request for CVIP to review "two (2) DVD's from the submitting agency" on April 21, 2009. *Id.* at 3. Presumably these DVDs contained material found on Anderson's computer, although the report does not explicitly say so. *See id.* at 1-4. The report goes on to state that "submitted files were compared with NCMEC's Child Recognition and Identification System (CRIS)" and that "[t]here were some files that appear to contain child victims who have been identified by law enforcement." *Id.* at 3-4. The next two reports are entitled "Child Identification Reports" from CVIP, which are referenced in the ECD Technical Assistant Request. *Id.* at 5-13. It appears that these reports describe what is found on each of the DVDs; although, again, the Plaintiffs do not provide information to establish this, and this is not explicitly stated in the reports themselves. *See id.* at 5-13. The first page of each report states "[t]he following Child Identification Report lists the specific file name(s), the corresponding series name and the law enforcement point of contact who is providing age verification for the children." *Id.* at 5, 9. Each report then lists the names of the identified child pornography series found on the reviewed material: the first report lists 44 identified series, including the Christina and Misty series, while the second report lists 49 identified series, including the Christina, Misty, and Vicky series.[5] The reports do not contain specific information regarding what material was analyzed and how the analysis was performed. And the Plaintiffs do not otherwise provide this information.

The Plaintiffs appear to offer the CVIP reports for two purposes: 1) to explain why the Plaintiffs received notices from the USDOJ's Victim Notification System; and 2) as evidence that Anderson possessed images of the Plaintiffs. For either purpose, the

---

[5] The names of the other series are redacted.

reports are hearsay because they are out of court statements presented to establish the truth of the matter asserted: that images of the Plaintiffs were identified on Anderson's "digital material." Therefore, to be admissible, the reports must meet an exception to the hearsay rule.

The Plaintiffs assert, in conclusory fashion, that the CVIP reports are business records. Docs. 31 at 4; 31-4 ¶ 13 (characterizing the CVIP reports as "business records"). Fed. R. Evid. 803(6) allows the admission of hearsay in business records if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

The Court has already described the dearth of information and context provided by the Plaintiffs regarding the CVIP reports. Other than what is stated in the reports themselves, which is minimally helpful to determining whether the reports meet the business records exception, the Plaintiffs have provided no evidence that the CVIP reports meet the first three requirements of Rule 803(6). The Plaintiffs neither provide testimony from "the custodian or another qualified witness" about the reports nor show that they are certified in a manner compliant with Rule 902(11) or (12) or any other statute. The Plaintiffs do state that Special Agent Ward testified at Anderson's July 30, 2009 sentencing hearing and "mentioned several reports and introduced numerous images and other materials which were submitted for the Court's review." Doc. 31 at 5. The Plaintiffs also ask the Court to take judicial notice of the July 30, 2009 sentencing

hearing, including any reports or evidence submitted to the Court by Agent Ward for purposes of that hearing. First, the Plaintiffs' request that the Court take judicial notice of the entire criminal proceeding and the evidence therefrom is improper and is denied.[6] And to the extent the Plaintiffs seek to proffer Agent Ward's testimony as evidence establishing the admissibility of the CVIP reports, this fails. At the hearing, Agent Ward testified regarding her report to the Court and the "CART Examiner Report" as well as certain images found on Anderson's computer. Doc. 30-10 at 12-28. She did not testify about the CVIP reports and did not testify regarding the Plaintiffs or images of them. *See id.* Moreover, the CVIP reports were provided to the Plaintiffs by NCMEC. Thus, the relevant issue is whether the reports are business records of NCMEC or CVIP. Agent Ward is not a custodian of NCMEC or CVIP's records. Her involvement with the CVIP extends only to her request that NCMEC and CVIP analyze the material submitted. But Ward did not, and presumably cannot, testify about the analysis performed, the production of the report, or CVIP's and NCMEC's recordkeeping.

Finally, under Rule 803(6)(E), hearsay is admissible as a business record only if the opponent has not shown "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." And Anderson has made such a showing. First, Anderson points out that the CVIP reports themselves reveal trustworthiness issues. The bottom of each page of the ECD Technical Assistance Request states "LAW ENFORCEMENT OFFICIALS PLEASE BE ADVISED:

---

[6] The Eleventh Circuit has stated "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). Fed. R. Evid. 201 states that a court may take judicial notice of *facts* that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Plaintiffs provide no basis for the Court taking judicial notice of the entire criminal proceeding in this civil matter for the purpose of introducing the evidence from that proceeding in this matter. In any event, as discussed throughout this order, the record from the criminal prosecution, and especially Anderson's sentencing hearing, does not help the Plaintiffs.

This Report is being provided solely for informational purpose pursuant to NCMEC's congressional authorization and mission. Under no circumstances shall this Report be used as evidence of criminal wrongdoing." Doc. 31-9 at 2-4. Further, on the top of each page of the CIRs, it states "[t]he following does not constitute verification of the identity of the child." *Id.* at 6, 7, 8, 10, 11, 12, 13.

Also, Anderson points out, and the Plaintiffs do not dispute, that the Government expressed chain of custody concerns with much of the evidence during the criminal proceedings. *See* Doc. 31-10 at 7-9. Anderson's computer was, for a time, in the possession of Anderson's ex-wife's private counsel, whom she had retained pursuant to a pending divorce proceeding. *Id.* at 7:24-8:3. That computer was eventually given to the Bibb County Sheriff's Office and then to the FBI. *Id.* at 8:4-8. Therefore, because of concerns regarding the chain of custody for this evidence, AUSA Paul McCommon stated, at Anderson's sentencing hearing, the Government eventually made the determination, "given the hands that the evidence had gone through, that [it was] going to only focus on evidence that [it] felt was clearly not tainted by the original handling through the private attorney's office and through the Bibb County Sheriff's Office." *Id.* at 8:9-14. Because the Plaintiffs have not provided any evidence regarding what material NCMEC and CVIP analyzed to produce the reports, there remains a legitimate concern that the reports were generated based on what the Government determined was "tainted" evidence during Anderson's criminal proceeding. This undermines the trustworthiness of the source of information used to generate the reports. The Court does not suggest that chain of custody issues implicate civil proceedings the same way they do criminal proceedings. Rather, the issues surrounding the handling of

Anderson's computer are among several factors undermining the trustworthiness of the CVIP reports.

Considering all the foregoing, the Court cannot conclude the Plaintiffs have provided sufficient information to establish the CVIP reports meet the business records exception, and, therefore, the Plaintiffs have not established the reports meet an exception to the hearsay rule. Accordingly, the Court finds the CVIP reports to be inadmissible and that they cannot be considered for purposes of summary judgment.

In addition to whether the reports meet a hearsay exception, Anderson also argues the Court cannot properly consider the CVIP reports because the Plaintiffs flouted discovery obligations concerning those reports. Doc. 32 at 2-3. Anderson asserts that the Plaintiffs' attaching the CVIP reports to their summary judgment response represents not only the first time Anderson was able to review those reports but also the first indication provided to Anderson that the Plaintiffs had such information, despite Anderson specifically requesting that information. *Id.*

Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Goodman-Gable-Gould Co. v. Tiara Condominium Ass'n, Inc.*, 595 F.3d 1203, 1210 (11th Cir 2010) (stating the district court did not abuse its discretion when it excluded evidence due to a violation of Rule 26(e)(2)). Fed. R. Civ. P. 26(e)(1)(A) requires that a party supplement a previous response to an interrogatory, request for production, or request for admission "in a timely manner if the party learns that in some material respect the disclosure or

response is incomplete or incorrect" and the correct information has not been otherwise made known to the other party through discovery.

Here, the Plaintiffs' initial disclosures contained nothing regarding the CVIP reports or any indication that the Plaintiffs possessed those reports. Doc. 32-1. Then, in Anderson's requests for production, he submitted three requests regarding the allegations that CVIP analysts had matched the Plaintiffs' images to those on Anderson's computer:

> 14. Please produce documents and/or materials supporting the allegation that "Child Victim Identification Program (CVIP) analysts at the National Center for Missing and Exploited Children (NCMEC) matched images on the Defendant's computer to images of Amy in NCMEC's database and notified the law enforcement of its findings in a CVIP report" as set forth in paragraph 41 of your Amended Complaint.

> 15. Please produce documents and/or materials supporting the allegation that "CVIP analysts at NCMEC determined that the Defendant's collection of child pornography included images from the 'Misty Series'" as set forth in paragraph 42 of your Amended Complaint.

> 16. Please produce documents and/or materials supporting the allegation that "CVIP analysts at NCMEC determined that the Defendant's collection of child pornography included images and/or videos from the 'Christina Series,' which show Alice being sexually abused as a child by an adult man or men" as set forth in paragraph 46 of your Amended Complaint.

Doc. 32-2 at 6-7. But in their discovery responses, the Plaintiffs did not produce any documents that were responsive to Anderson's CVIP-related requests, and both their first and second set of responses lacked any written response to Anderson's CVIP-related requests. Docs. 29-7; 29-8. Meanwhile, despite not responding to these discovery requests concerning information from the CVIP, the Plaintiffs sought to procure that information by first serving a subpoena on the National Center for Missing and Exploited Children in October 2016, more than a year prior to the close of

discovery. Doc. 32-3. According to an affidavit by the Plaintiffs' attorney James R. Marsh, he contacted NCMEC to determine if they possessed the CVIP reports in March 2017. Doc. 31-4 ¶ 9. After being informed by NCMEC that their subpoena was too broad, Marsh stated the Plaintiffs "made significant progress with NCMEC on the appropriate wording of subpoenas and the parameters of what they can and cannot issue in terms of business records and their presentation concerning those business records." *Id.* ¶ 13. Marsh states that, eventually, NCMEC did agree to produce the CVIP reports. *Id.* ¶ 14. But Anderson claims that, prior to their response to Anderson's motion for summary judgment, Plaintiffs never informed him that they were pursuing the reports from NCMEC or, much less, that NCMEC had actually provided the reports.

Therefore, the Plaintiffs violated their duty under Rule 26(e)(1)(A) to supplement their initial responses. And the Plaintiffs have not provided a substantial justification for this failure. It is unknown when exactly NCMEC turned over the CVIP reports to the Plaintiffs. Marsh claims they did so only after Anderson "failed to produce his criminal file in discovery." *Id.* ¶ 14. Anderson informed the Plaintiffs that he did not have the criminal file on November 3, 2017. Doc. 31-8 at 4. Certainly, this was close to the November 10, 2017 discovery deadline. But the Plaintiffs have provided no reason why they never informed Anderson that they were seeking the CVIP reports or why, when they learned NCMEC would provide the reports, they did not inform Anderson of this.[7]

---

[7] The Plaintiffs do state that "Detective John Weaver, Special Agent Kevin Shanley, and Detective Roy Shepherd are listed in the CVIP as the 'investigator' in the Christina, Misty, and Vicky series" and that these "individuals were disclosed to [Anderson] . . . as 'persons . . . likely to have discoverable information that the Plaintiffs may use to support their claims or defenses.'" Doc. 31 at 4. To the extent the Plaintiffs are arguing that Anderson could have sought the CVIP reports, and any related information, from these individuals, that does not negate the fact that Plaintiffs had a discovery obligation to supplement their responses. Indeed, they hold the burden at trial; therefore, the burden is on them to discover information to allow them to establish their case and survive summary judgment. The disclosure requirements put a

Finally, Anderson asserts that he was prejudiced by the Plaintiffs' discovery lapses in two ways.  First, he argues the Plaintiffs' failure to disclose prevented him from investigating and discovering information about the reports.  Doc. 32 at 4.  In addition, he argues that the Plaintiffs have deprived him of the ability to review the entire report. *Id.*  Although the Plaintiffs present the reports as one document, as stated, they are in fact three separate reports, as evidenced by the non-sequential pagination.  Doc. 31-10.  And the Plaintiffs attached to their response only 12 pages from the reports, but the reports indicate that there were at least 134 other pages of material therein that was not produced by the Plaintiffs.  Doc. 31-9.  The pagination on one CIR report shows it is a part of a 68-page document, of which the Plaintiffs disclosed only 4 pages, while the other shows that it is a part of a 75-page document, of which the Plaintiffs disclosed only 5 pages.  *Id.* at 5-8, 9-13.  Anderson is unable to examine the rest of the reports to determine if there is any information that pertains to either his case or the trustworthiness of the reports themselves.  In addition, Anderson does not know if NCMEC turned over any other documents to the Plaintiffs in response to their subpoena, and, if so, he has been unable to review those documents.  Thus, the Plaintiffs' failure to uphold their discovery obligations was not harmless.

In short, the Plaintiffs have violated their duty under Rule 26(e)(1)(A), and the CVIP reports are properly excluded under Rule 37(c).  That the Plaintiffs have not produced the entire CVIP reports suggests a likely reason why they ignored their discovery obligations.  They simply did not want to produce the entire reports, preferring instead to cherry-pick the good, hide the bad, and, through their surprise, put Anderson

---

burden on them to inform Anderson of what they discover if that information is requested.  That he did not seek out this information from these individuals himself does not alter that burden.

at a disadvantage.  If that was their plan, it is not clear how they thought they could get away with it.  But what is clear is that the Plaintiffs have yet to produce the entire reports and sprang on Anderson portions of the reports they wanted to use in their summary judgment response.[8]

In sum, the CVIP reports cannot be considered by the Court for purposes of summary judgment because (1) they are hearsay to which the Plaintiffs have not established an applicable hearsay exception and (2) the Plaintiffs violated their discovery obligations regarding the reports and, thus, they may not be submitted in response to Anderson's motion pursuant to Rule 37(c).

### 2.  VNS Notices

Anderson also objects to the admissibility of notices the Plaintiffs received pursuant to the United States Department of Justice's Victim Notification System.  Doc. 32 at 9.  The VNS notices consist of letters and emails from the United States Department of Justice and Bureau of Prisons to the Plaintiffs, or those designated to receive notices on their behalf.[9]  The letters inform the Plaintiffs, or the designated recipient, that the Plaintiffs have been identified as victims or potential victims of Anderson or that they have requested notices regarding Anderson; the notices then inform the recipient of updates regarding either Anderson's prosecution or his incarceration.  Docs. 31-2; 31-3; 31-5; 31-6; 31-7.  According to the Plaintiffs, the

---

[8] This is not mere speculation.  The evidence before the Court, including that not all of the images in the series were pornographic and that the Government did not introduce images of Amy, and as far as the Court knows Vicky or Alice, in Anderson's criminal trial, suggests that there likely was information in the missing sections of the reports, and any other material from NCMEC, that could have helped Anderson in opposing the Plaintiffs' claims.  And, thus, the Plaintiffs sought to bury this evidence and include only that evidence helpful to their case.

[9] For most of the notices, the recipient has been redacted, for those that have not been redacted, the recipient is either James R. Marsh, attorney for Amy, or Carol L. Hepburn, attorney for Alice and Vicky.

notices were sent to them because NCMEC and CVIP identified their images on Anderson's computer.  Doc. 31 at 4.

Like the CVIP reports, the VNS notices are hearsay: they are out of court statements offered to establish the truth of the matter asserted—that the Plaintiffs' images were found on Anderson's computer.  The Plaintiffs state, once again in conclusory fashion, that the VNS notices are "business records" without providing any basis or support for this assertion.  Rule 803(6) states that the requirements to meet the business records hearsay exception must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification."  The Plaintiffs provide declarations by two of their attorneys, Carol L. Hepburn and James. R. Marsh, concerning the Plaintiffs' receipt of the VNS notices.  Docs. 31-1 ¶ 2 (stating the VNS notices "are true and correct copies of the redacted VNS notifications for the Vicky Series victim"); 31-4.  But the Plaintiffs provide no testimony from any witness familiar with the actual production of the VNS notices or the recordkeeping process for those notices.  And the Plaintiffs provide no evidence through other means that the VNS notices meet the business records exception.  Moreover, like the CVIP reports, Anderson has shown that the "method or circumstances of preparation [of the VNS notices] indicate a lack of trustworthiness."  Rule 803(6)(E).  The VNS notices were prepared and sent to the Plaintiffs based on the CVIP reports, which, as stated, lack trustworthiness.  Therefore, the trustworthiness of the VNS notices themselves has been questioned.  As such, the Plaintiffs have not

established that the VNS notices are admissible as business records, and they cannot be considered to oppose Anderson's summary judgment motion.[10]

### 3. Letter from AUSA McCommon

Finally, Anderson contests the admissibility of a letter from Assistant United States Attorney Paul C. McCommon III to James Marsh (Doc. 31-7). Doc. 32 at 9. To the extent this letter is produced to support the Plaintiffs' assertion that Anderson possessed their images, it too is hearsay because it, again, is an out of court statement offered to prove the truth of the matter asserted: that "approximately 10 images of Amy were possessed by Anderson on his computer." Doc. 31-7. Again, the Plaintiffs state in conclusory fashion that the letter is a business record. And, again, the Plaintiffs provide no testimony from the "custodian or another qualified witness" or that the letter is certified in a manner that "complies with Rule 902(11) or (12) or with a statute permitting certification." Rule 803(6)(E). And again, the Plaintiffs otherwise present no admissible evidence to establish the letter is an admissible business record. Accordingly, the Court cannot find that the letter meets the business records exception and cannot consider it for purposes of summary judgment.

Without the CVIP reports, VNS notices, and the letter from AUSA McCommon, the Plaintiffs have produced no evidence to establish that Anderson possessed their images, much less that he possessed images of them that would meet the statutory

---

[10] The VNS notices could potentially fall under the public record and reports exception to the hearsay rule, Fed. R. Evid. 803(8), because they were produced pursuant to a legal duty under the Crime Victims' Rights Act, 18 U.S.C. § 3771. *See* Doc. 31-9 at 8, 12 (the CIR's, which state that the series identified require "victim notification in accordance with the Crime Victims' Rights Act, 18 U.S.C. § 3771"). But the Plaintiffs fail to make this argument. Moreover, public records, like business records, are not admissible if "the sources of the information or other circumstances indicate [a] lack of trustworthiness." Rule 803(8). Here, Anderson has challenged the trustworthiness of the information contained in the VNS notices, and the only evidence that establishes how the information was gathered, and thus supports the trustworthiness of the information, is the CVIP reports, which the Court has deemed inadmissible.

definition of "child pornography" or "sexually explicit conduct." Accordingly, there is no genuine dispute of fact as to whether Anderson possessed child pornography images of them, and Anderson is entitled to judgment as a matter of law.

**B.      Whether the Inadmissible Evidence Establishes Anderson Possessed Child Pornography Images of the Plaintiffs**

Even if the CVIP reports, the VNS notices, and McCommon's letter were admissible, Anderson would still be entitled to summary judgment. As stated, it is not enough for the Plaintiffs to adduce evidence that Anderson possessed images of them. Instead, the Plaintiffs must also come forward with evidence that Anderson possessed images of them meeting the statutory definition of the type that entitles them to relief. For Amy's and Vicky's § 2255(a) claim and Alice's Georgia RICO claim, this means the images of them must meet the definition of that which Anderson pled guilty to possessing under § 2252(b)(4)(A): that the images depict "a minor engaging in sexually explicit conduct." For Alice's § 2252A claim, she must establish that the images of her meet the definition of "child pornography," which is defined by 18 U.S.C. § 2256(8) as:

> [A]ny visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where
> (A) the production of such visual depiction involves *the use of a minor engaging in sexually explicit conduct*;
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

(emphasis added). Accordingly, for all of the Plaintiffs' claims, they must establish that Anderson possessed images depicting them engaged in "sexually explicit conduct," defined by 18 U.S.C.A. § 2256(2)(B) as:

(i) graphic sexual intercourse, including genital-genital, oral- genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
(ii) graphic or lascivious simulated;
   (I) bestiality;
   (II) masturbation; or
   (III) sadistic or masochistic abuse; or
(iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

In moving for summary judgment, Anderson has carried his burden by showing that, from the evidence, the Plaintiffs cannot establish, by a preponderance of the evidence, that he possessed sexually explicit images of them. Therefore, to survive summary judgment, the Plaintiffs must present sufficient evidence to establish a genuine fact dispute as to this issue. Put another way, they must present evidence that would allow a reasonable jury to find in their favor—that is (1) Anderson possessed images of the Plaintiffs as minors and (2) those images meet the definition of sexually explicit. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

At summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. And the drawing of legitimate inferences from evidence should be left to a jury. *Anderson*, 477 U.S. at 255. If, viewing the evidence in the non-moving party's favor, a jury could draw a legitimate inference as to a dispositive issue in that party's favor, then the Court must deny summary judgment. Conversely, if a jury could not do so, then summary judgment must be granted. Here, viewing all the evidence— even that deemed inadmissible—and drawing all justifiable inferences in the Plaintiffs' favor, a reasonable jury could find that Anderson possessed images of the Plaintiffs as

minors. But a reasonable jury could not reach the conclusion that the images Anderson possessed meet the statutory definition of sexually explicit.

Based on inadmissible evidence, a jury could reasonably conclude that Anderson possessed images from the Christina, Vicky, and Misty child pornography series. And it is undisputed that these series include images of the Plaintiffs as minors. Doc. 10 ¶¶ 20, 30, 33. Thus, a jury could legitimately infer that Anderson possessed images of the Plaintiffs as minors. However, for the Plaintiffs to prevail on their claims, a jury would have to infer from this conclusion—that Anderson possessed images of the Plaintiffs as minors from the Christina, Vicky, and Misty series—that Anderson possessed sexually explicit images of the Plaintiffs. But for the following reasons, they could not legitimately do so.

First, the Plaintiffs have not asserted that *all* of the images in the Christina, Vicky, and Misty series depict sexually explicit conduct. Indeed, the evidence they offer shows otherwise. Vicky and Alice's attorney, Carol L. Hepburn, stated in her affidavit that she had "seen sanitized and non-pornography images" from the Vicky and Christina series. Doc. 31-1 ¶¶ 2-3. And, during the criminal proceeding, AUSA Paul C. McCommon III informed Marsh that the images of Amy on Anderson's computer, which were allegedly from the "Misty" series, were not introduced or discussed at any hearing, meaning they were not relied on as examples of child pornography possessed by Anderson, and that the images "were nude or semi-nude depictions solely of Amy, with no images possessed involving Amy and any other person."[11] Doc. 31-7 at 2. In other words, if anything, the evidence suggests that, even if Anderson possessed the Plaintiffs'

---

[11] Whether because of this description or for other reasons, Marsh withdrew his request for restitution sometime after receipt of this letter. Doc. 31-10 at 3:4.

images, those images likely did not depict "sexually explicit conduct," as required. Accordingly, even if Anderson did possess images from those series, from that fact alone, a jury could not draw the conclusion that he possessed sexually explicit images of the Plaintiffs.

Next, it is undisputed that not all of the images of minors found in Anderson's possession qualified as "sexually explicit" or "child pornography." From the evidence, this includes the images of Amy in Anderson's possession, which, as stated, the letter from AUSA McCommon suggests were not sexually explicit. Further, the transcript of Anderson's sentencing hearing also establishes that many of the images of children that Anderson possessed could not be considered pornographic. The Government did introduce specific images at the hearing, but they did not specify what victims were portrayed in any images or whether images of certain victims met the statutory definition.[12] Rather, the Government discussed the images that Anderson possessed generally in determining whether he had distributed child pornography. During the hearing, the Government conceded that a sentencing enhancement for distribution was *not* appropriate because, according to the Government, those images possessed by Anderson that he allegedly distributed did not meet the statutory definition of child pornography. Doc. 31-10 at 4:10-22 ("[T]he Government would not view those images as being child pornography as defined by law."); *see also* Doc. 29-1 ¶¶ 9-10 (Anderson's Statement of Undisputed Material Facts, which states that the Government determined "some of the images allegedly possessed by [Anderson], while involving

---

[12] The Court notes that, at the sentencing hearing, the Government did not discuss specific victims but the images in Anderson's possession generally, and there is no evidence that the Plaintiffs' images were among those discussed. In McCommon's letter to Amy's counsel, he stated that no images of Amy were introduced at any hearing. Doc. 31-7 at 2. And there is no evidence that images of Alice or Vicky were introduced at any hearing either.

minors, did not constitute child pornography under the law" and that Judge Lawson also found "not all [of the images] . . . met the definition of 'child pornography'").[13]  Special Agent Ward testified that, in her opinion, only a "couple" of the images Anderson allegedly distributed were child pornography, although, again, she did not specify what victims were portrayed in these images.  *Id.* at 15:7-12.  Ultimately, Judge Lawson reviewed an array of images of unidentified victims, which Anderson was alleged to have distributed, and determined that, of those examined, three did meet the statutory definition of child pornography.  *Id.* at 29:13-31:3.  But inherent in this finding is that the other images among that array *did not* meet the statutory definition.  *See id.*  From the evidence, it appears just as likely that the images of the Plaintiffs could have fallen into this category—those that did not meet the statutory definition—as it is that they were sexually explicit.

Finally, and perhaps most notably, the Plaintiffs have presented no evidence about the content of the images in Anderson's possession, which would support their allegation that these images depicted the Plaintiffs "engaged in sexually explicit conduct" as defined by § 2256(2)(B).  Indeed, the only evidence presented that describes the content of an image known to be in Anderson's possession is the letter from AUSA McCommon to Amy's counsel, and, as discussed, that letter tends to support that the images were not sexually explicit.[14]

---

[13] Because the Plaintiffs did not file their own statement of material facts in response, the Court can consider this fact admitted.

[14] The Court notes that this is the only substantive evidence that describes the content of the images actually possessed by Anderson, and the Plaintiffs provided no evidence regarding any images that Anderson possessed of Alice and Vicky.  The parties do not say whether the pornographic images found on Anderson's computer still exist.  Almost certainly, Anderson's computer has been destroyed and, in the Court's experience, the USAO does not retain the images.  Perhaps NCMEC maintains a database of seized images, but the Plaintiffs' lawyers do not suggest that the images found on Anderson's computer

Considering the foregoing, drawing an inference from Anderson's possession of images from the Christina, Vicky, and Misty series that those images meet the statutory definition, without evidence describing the content of those image, would neither be legitimate nor justified. And without this inference, a reasonable jury could not find by a preponderance of the evidence that Anderson possessed sexually explicit images of the Plaintiffs. Simply put, the Plaintiffs, as the non-moving party at summary judgment, have a burden to produce evidence that establishes a genuine fact dispute as to this material issue, which they have failed to uphold. Accordingly, the Defendants are entitled to summary judgment.

## IV. CONCLUSION

There is no doubt that the plaintiffs have been victimized by child pornographers, and Congress clearly, and understandably, wants child pornographers to compensate their victims. But rules of procedure and evidence still apply, even for convicted child pornographers. Victims must have admissible evidence tending to establish that the defendant from whom they seek compensation possessed their pornographic images. Typically, that evidence comes from the underlying criminal prosecution. Here, it didn't and the plaintiffs have not otherwise come forward with admissible evidence that Anderson possessed their pornographic images. Accordingly, Anderson's motion for summary judgment (Doc. 29) is **GRANTED**, and the Plaintiffs' claims are **DISMISSED with prejudice**.

---

have been maintained by NCMEC or any other agency. In any event, what is clear is that there is nothing in the record suggesting that the images found on Anderson's computer still exist. Given the Plaintiffs' lawyers experience in these matters and their apparently thorough and persistent efforts to get information from NCMEC, it seems doubtful that the images taken from Anderson's computer still exist.

**SO ORDERED**, this 8th day of June, 2018.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT